# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## Southern Division

| | |
|---|---|
| BONITA M. JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. CBD-09-2314 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner, Social Security ) | |
| Administration ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Bonita M. Jones, ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, and Supplemental Social Security Income ("SSI") payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1382 et seq. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion) and Commissioner's Motion for Summary Judgment ("Commissioner's Motion"). The Court has reviewed said motions and the applicable law. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby DENIES Plaintiff's Motion and GRANTS Commissioner's Motion.

## I. Background

Plaintiff filed for DIB and SSI on September 18, 2006. (R. 91, 96). In both applications the alleged onset date was August 9, 2006. (R. 91, 96). The claims were denied on December 8,

2006 and again on April 5, 2007 upon reconsideration. (R. 11). On May 29, 2008, a video hearing was held before an Administrative Law Judge ("ALJ"), at which Plaintiff was represented by counsel. (R. 22-57). On July 8, 2008, the ALJ determined in a written decision that Plaintiff was not disabled within the meaning of the Act. (R. 9). Plaintiff subsequently requested review of the ALJ's decision by the Appeals Council, which was denied on August 26, 2009, making the ALJ's decision final and appealable. (R. 1-5).

At the time of the hearing, Plaintiff was 46 years old. (R. 27). Plaintiff has three adult children. (R. 13). Plaintiff has a high school education. (R. 13). Plaintiff is approximately 5'7" and weighs approximately 353 pounds. (R. 14). Plaintiff has a history of chronic mental illness, which includes one suicide attempt in the late-1990's for which she received psychiatric hospitalization. (R. 14). Plaintiff has been in regular psychiatric treatment since 2003. (R. 14). Plaintiff's sources of income are Social Services and Food Stamps. (R. 28).

## II. ALJ's Decision

The ALJ evaluated Plaintiff's claim using the five-step sequential process set forth in 20 C.F.R. §§ 404.1520 and 416.920 (2009). At the first step, the ALJ determined that Plaintiff has not engaged in substantial gainful activity ("SGA") since August 9, 2006 - the alleged onset date. (R. 13). At the second step, the ALJ determined that Plaintiff has the following severe impairments: Schizophrenia, Depression, and Obesity. (R. 13). At the third step, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings"). (R. 14). At the fourth step, the ALJ determined Plaintiff's residual functional capacity ("RFC"). Accordingly, Plaintiff has the physical residual functional capacity ("PRFC") to perform light work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a) (2009).

(R. 14). Due to her obesity, Plaintiff cannot crouch and she can only occasionally balance and/or climb stairs. (R. 14). Plaintiff must avoid heights and hazardous machinery. (R. 14). The ALJ also determined that Plaintiff has the mental residual functional capacity ("MRFC") to perform an unskilled level of work with limited public contact. (R. 17). In addition, at the fourth step, the ALJ determined that Plaintiff is unable to perform any past relevant work ("PRW"). (R. 20). The ALJ determined that Plaintiff's PRW was unskilled and thus transferability was not an issue. (R. 20). At the fifth step, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, considering Plaintiff's age, education, work experience, and RFC. (R. 20). Based on the limitations that the ALJ found, the ALJ asked the vocational expert ("VE") if jobs existed in the national economy for an individual with the Plaintiff's age, education, work experience, and RFC. (R. 21). The VE testified that given all of the factors, the individual would be able to perform the requirements of representative light unskilled occupations such as a Sorter/Inspector and as an Office Helper, non-typing but the number of jobs available for the latter position reflects a downward adjustment 20% to account for the claimant's limitation in public contact. (R. 21).

### III. **Standard of Review**

The role of this Court is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is a reasonableness standard of review and in this context substantial evidence does not refer to a considerable amount of evidence. France v. Apfel, 87 F. Supp. 2d 484, 489 (D. Md. 2000) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)). Instead, substantial evidence means evidence that a reasonable mind might

accept as adequate to support a conclusion. France at 489 (citing Richardson v. Pearles, 402 U.S. 389, 410 (1971)). It is more than a scintilla, but less than a preponderance, of the evidence presented. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Johnson v. Califano, 434 F. Supp. 302, 307 (D. Md. 1977). Ordinarily, if there is substantial evidence to support the decision of the Commissioner, then that decision must be upheld. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). This Court cannot try the case de novo or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. Id.

The Court must also determine whether the Commissioner followed correct procedures. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman, 829 F.2d at 517. After review, the Court has the power to affirm, modify, or reverse the decision of the Commissioner, with or without remanding the case for rehearing. 42 U.S.C. § 405(g); Virek v. Finch, 438 F.2d 1157, 1158 (4th Cir. 1971).

Finally, it must be noted that hearings on applications for Social Security disability entitlement are not adversary proceedings. Easley v. Finch, 431 F.2d 1351 (4th Cir. 1970). Moreover, the Social Security Act is a remedial statute and it is to be broadly construed and liberally applied in favor of beneficiaries. Dorsey v. Bowen, 828 F.2d 246 (4th Cir. 1987). A claimant is entitled to a full and fair hearing and failure to have such a hearing may constitute sufficient cause to remand the case. Sims v. Harris, 631 F.2d 26 (4th Cir. 1980).

### IV. Analysis

Plaintiff raises four arguments. First Plaintiff claims that the ALJ is not empowered to selectively discredit a consultative examiner's ("CE") medical source statement in order to

4

support a claim to deny benefits. Second, the ALJ's finding that Plaintiff did not meet or equal a listing is not supported by substantial evidence. Third, the ALJ's hypothetical question to the VE does not remotely describe Plaintiff's mental impairment. Finally, Plaintiff argues that Jones was deprived a full and fair hearing by the ALJ.

A. The ALJ Provided Adequate Explanation for Rejecting Portions of the Consultative Examiner's Medical Source Statement.

Plaintiff objects to the ALJ's rejection of only a single portion of the 2008 report prepared by Donald Nachand, Ph.D., the psychological CE. Plaintiff claims that "[t]his piecemeal exclusion of Dr. Nachand's medical opinion is as harsh as it is illogical." (R. 8). While it may be harsh, it is not illogical, and more importantly it is not improper. E.g. Vo v. Astrue, 518 F. Supp. 2d 715, 730 (D.S.C. 2007) ("[T]he court instructs the ALJ to indicate whether he accepts [the consultative psychiatrist's] opinion in full, and if not, explain the reasons for rejecting all or portions of that opinion."). It is clear there is a duty to explain the weight the ALJ gives to Dr. Nachand's opinion and the ALJ cannot simply ignore it. However, it is equally clear that the ALJ is not bound by such opinion. 20 C.F.R. §§ 404.1527(f), 416.927(f); See SSR 96-6p, 1996 WL 374180 *2 (July 2, 1996) (noting that ALJ's "are not bound by findings made by State agency or other program physicians and psychologists, but may not ignore these opinions and must explain the weight given to the opinions in their decisions.").

Here, the ALJ's decision states the reasoning behind the findings of which Plaintiff complains:

> Consistent with the non-examining State agency opinions, Dr. Nachand wrote that [Plaintiff's] capacities for sustained concentration and persistence were moderately impaired (Exhibits 10F, 2F, and 3F). The undersigned accords these said opinions, Exhibits 2F, 3F, and 10F, significant weight in determining [Plaintiff's] mental residual functional capacity. Dr. Nachand went on to write that the [Plaintiff] shows "marked" impairment in social interaction and adaptation (Exhibit 10F). Because neither the other opinion evidence, nor any

> objective evidence, comports with this conclusion, and because Dr. Nachand gave
> no supporting explanation for this finding, the undersigned rejects this portion of
> his opinion.

(R. 18).

Though the Court may have decided differently, this is both a reasonable explanation and not inconsistent with the other evidence in the record. SSR 96-6P, 1996 WL 374180 * 2 (July 2, 1996) ("The regulations provide for progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."); See Craig v. Charter, 76 F.3d 585, 590 (4th Cir. 1996) ("By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."). Further, Plaintiff does not point to any evidence in the record that supports that portion of Dr. Nachand's report that the ALJ rejected. Plaintiff claims that "[i]t is clearly result oriented of the ALJ to reject only the portion of Dr. Nachand's opinion that would warrant a different result." But as previously stated, that portion was rejected because of the lack of objective evidence in support, because there was no opinion evidence in support, and because in the absence of other corroborating evidence, Dr. Nachand offered no explanation for that particular finding.

Plaintiff argues that she would have faced an impossible situation if the medical evidence from For All Seasons, Inc., (Exhibit 1F) was deemed "unworthy of inclusion" in the record. Plaintiff believes the CE's findings were only considered reliable when supported by this additional finding that Plaintiff can work. However, the ALJ did consider those records from For All Seasons, Inc., as well as other records. For example, the ALJ noted that while "[Plaintiff] did manifest some difficulties responding to the authority of the undersigned during the course of her hearing, the record evidences that on nearly every visit to every health and mental health care provider, [Plaintiff] has presented as 'pleasant,' 'cooperative,' and/or

'appropriate' (Exhibits 1F, 7F, 10F, and 15F)." (R. 16). Likewise, Dr. Nachand also observed that "[Plaintiff's] manner was friendly and she was fully cooperative." (R. 294).

By contrast, Plaintiff does not identify any aspect of the medical record that might bolster Dr. Nachand's opinion that Plaintiff has "marked impairment in social functioning and adaptation." Under the regulations, Plaintiff has the burden of proof through step 4. 20 C.F.R. § 404.1512 (a) ("In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled."). Therefore Plaintiff cannot simply make a bald allegation that the ALJ's selective rejection of a single portion of Dr. Nachand's opinion is somehow subterfuge to deny benefits, when there is evidence that supports the ALJ's decision. The Court agrees that an ALJ is not permitted to handpick portions of a contradicted report simply to deny benefits. Hamlin v. Barnhart, 365 F.3d 1208, 1219 (10th Cir. 2004) ("The ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability."). However, the instant case is not such an example, and the medical opinion at issue was not an uncontradicted opinion.

B. The ALJ's Finding that Jones Did Not Meet or Equal a Listing is Supported by Substantial Evidence.

Next, Plaintiff argues the ALJ's finding that Plaintiff did not meet or equal a Listing is not supported by substantial evidence. This is because first, Plaintiff claims that Dr. Nachand's opinion supported a finding that Plaintiff satisfied the requirements in 12.03B and 12.04B, (sometimes referred to as "Paragraph B").[1] "What the ALJ's decision does not mention is that

---

[1] 20 C.F.R. § 404 Subpart P, Appendix 1, 12.03(B) is satisfied when at least two of the following are met: 1) "Marked restriction of activities of daily living;" 2) "Marked difficulties in maintaining social functioning;" 3) "Marked difficulties in maintaining concentration, persistence, or pace;" or 4) "Repeated episodes of decompensation, each of an extended period." Similarly, 20 C.F.R. § Subpart P, Appendix 1, 12.04(B) is satisfied when at least two of the following are met: 1) "Marked restriction of activities of daily living;" 2) "Marked

marked impairments in social functioning and episodes of decompensation meet the Listings." (Pl.'s Mot. 10). Second, Plaintiff notes that the ALJ failed to make a medically supported determination that Plaintiff does not equal a Listing because counsel alleged Plaintiff's high Body Mass Index ("BMI") at the hearing and the non-examining physicians "could not be said to have considered obesity as [sic] impairment since there is no record that they were aware of [Plaintiff's] high BMI." Therefore, Plaintiff claims the finding that her "high BMI in combination with her mental impairments did not equal a Listing was entirely a medical finding made by the ALJ," which Plaintiff contends is improper. (Pl.'s Mot. 12). Both of these assertions are without merit.

Plaintiff notes "[t]he fact that Dr. Nachand was using terms like 'moderate' and 'marked' clearly corresponds to the rating categories on SSA's own forms." (Pl.'s Mot. 11). If Plaintiff's argument ended here, perhaps it would be more persuasive. But Plaintiff immediately followed the last statement with, "[h]owever a marked impairment in 'adaption' [sic] would implicate the category of 'episodes of decompensation, each of extended duration. . . . Particularly since 'adpation' [sic] is only mentioned in the context of 'episodes of decompensation.'" (Pl.'s Mot. 11).

First, it seems illogical that an author who appears to be "clearly borrowing terms" from the regulations according to Plaintiff, would suddenly stop, particularly when it is the only portion of the opinion that could support a finding of disability. What Plaintiff presents to the Court is that Dr. Nachand uses language that corresponds to the SSA forms with patent clarity, satisfying the third requirement in 12.03(B) and 12.04(B). But then, when it comes to meeting the last of the four requirements in 12.03(B) and 12.04(B), Dr. Nachand uses the term

---

difficulties in maintaining social functioning;" 3) "Marked difficulties in maintaining concentration, persistence, or pace;" or 4) "Repeated episodes of decompensation, each of an extended period."

"adaptation" but really means episodes of decompensation.

To be clear, the regulations state "repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R. § 404 Subpart P, Appendix 1, Section 12.00(C)(3) (2009). The regulations explicitly state that such may be inferred and Plaintiff could have presented examples from the record where such an inference could be made. Instead, Plaintiff argues that when the ALJ read the word "adaptation" in Dr. Nachand's opinion, without more, the ALJ should have made the conclusory mental leap and inferred "decompensation." While Plaintiff presents no evidence on the point, there is evidence in the record that would support the ALJ's determination that repeated episodes of decompensation is not supported by substantial evidence. For example, on the Psychiatric Review Technique Form (Exhibit 2F), completed by Kenneth Wessel, Ed.D., it indicates that there were only one or two episodes of decompensation, each of extended duration. (R. 219).[2]

Second, the word "adaptation" does not appear in the definition of episodes of decompensation. However, it is true that a form of the word does; episodes of decompensation as defined in the regulations "are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning…" 20 C.F.R. § 404 Subpart P Appendix 1 Section 12.00(C)(4) (2009). However, there are other places where the actual word "adaptation" can be found. For example, "[t]reatment may or may not assist in the achievement of a level of adaptation adequate to perform sustained SGA." 20 C.F.R. § 404 Subpart P, Appendix 1,

---

[2] Further, Plaintiff notes that this report was prepared without knowledge of the For All Seasons, Inc. records, implying that Dr. Wessel's report is thereby flawed. However, Plaintiff does not allege that the omitted records would have lead to a different finding, only that they were omitted. See Marshall v. Barnhart, 2002 WL 32488432 *7 (D. Md. 2002) (noting that no argument was made that the omitted records "would have been useful evidence or supported any other findings than what the ALJ reached, she simply argues that additional medical records existed…. [but be that as it may] their absence does not undermine the ALJ's findings.").

Section 12.00(H) (2009). On the SSA form, SSA-4734-F4-SUP, labeled "Mental Residual Functional Capacity Assessment" (Exhibit 3F), Section I, part D, is titled "Adaptation." Coincidentally, all four of the boxes in that subsection are marked "Not Significantly Limited." (R. 234).

Giving Plaintiff the benefit of the doubt, and accepting arguendo that Dr. Nachand's opinion purports to lay claim to two of the four requirements being satisfied in paragraph B - this still does not vitiate the ALJ's decision. The ALJ goes through each of the four criteria in 12.03(B) and 12.04(B) and explains why Plaintiff does not satisfy each. Included in that discussion is the weight given to the evidence on a particular point. Further, those occasions where a report, or only part of a report, is deemed to carry little weight, the ALJ articulates the reasoning. This is not a case where an ALJ's use of a report, by itself, is used to "serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) (quoting Martin v. Secretary of Health, Education and Welfare, 492 F.2d 905, 908 (4th Cir. 1967); citing also Hayes v. Gardner, 376 F.2d 517 (4th Cir. 1967)) (emphasis in quote). Therefore, even if the Court were to view the report through the interpretive lens that Plaintiff suggests, the ALJ's decision is still properly supported by substantial evidence.

Regarding the issue of obesity, Plaintiff asserts that the ALJ "failed to make a medically supported determination that Jones did not meet or equal a Listing." (Pl.'s Mot. 12). The stated reason is that "[c]ounsel alleged that Jones' high BMI would warrant consideration of equaling a Listing if the criteria of Listings 12.03 or 12.04 were not met strictly." (Pl.'s Mot. 12). In addition, Plaintiff states that "[t]he ALJ simply does not have the medical acumen to determine whether a high BMI (nearly twice the threshold level of consideration in SSR 02-1p) in

10

combination with credibly severe mental impairments do not meet or equal Listings." (Pl.'s Mot. 12). This assertion by Plaintiff is misguided.

While there is no listing for obesity per se, the regulations state:

we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing.

SSR 02-1p, 2000 WL 628049 *5 (September 12, 2002). In addition, the regulations state an ALJ will not make assumptions regarding the severity or functional impact of obesity combined with other impairments. SSR 02-1p, 2000 WL 628049 *6 (September 12, 2002). Thus, while obesity clearly may affect another impairment, it is not a foregone conclusion. At step three of the sequential evaluation, it is still Plaintiff's burden to show that she meets or equals a Listing. See France v. Apfel, 87 F. Supp. 2d 484, 488 (D. Md. 2000) (noting that while there was evidence to establish that the plaintiff experienced symptoms that are often associated with HIV, the plaintiff "failed to establish that these symptoms were HIV-related.").

The regulations provide an example that illustrates how obesity may increase the severity of another impairment. Listing 104 involves loss of function in the musculoskeletal system and states: "[t]o assist the ALJ in determining the level of impairment of the musculoskeletal system . . . the Listing instructs the ALJ to consider additional and cumulative effects of obese individuals with musculoskeletal impairments." Wetmore v. Astrue, 2009 WL 6449319 *20 (N.D.W.Va. 2009). Here, as the regulations require, the ALJ makes specific findings that relate to her obesity. For example, here the ALJ notes that "[a]fter careful consideration of the entire record, the undersigned finds that [Plaintiff] has the physical residual functional capacity to perform light work . . . but that due to her obesity, [Plaintiff] must avoid heights and hazardous machinery." (R. 17). In addition, the ALJ "finds from the evidence that [Plaintiff's] obesity

11

does affect her exertional capacity." (R. 19). Further, the ALJ concludes that Plaintiff's "weight of 335 pounds on her 5'7" frame significantly limits her ability to climb and/or work at heights and/or with hazardous machinery and/or to crouch."

There are also examples within the regulations showing how obesity may impact a mental impairment. See SSR 02-1P, 2000 WL 628049 (September 12, 2002) (noting mental disorder listing 12.05 (Mental Retardation) as an example of when "obesity that is 'severe' . . . satisfies the criteria in listing 12.05C for a physical impairment imposing an additional and significant work-related limitation of function."). There are no such instructions in 12.03 or 12.04.[3] That is not to say that a connection between obesity and depression would be impossible. But when looking at the record as a whole, that connection is never made by any therapist or medical professional – including those who meet Plaintiff in person and were well aware of her weight. For example, Dr. Nachand personally examined Plaintiff and nowhere in his report is weight or obesity mentioned as a factor regarding her mental illness. On this record, there is evidence that a reasonable mind could accept the conclusion of the ALJ. France, 87 F. Supp. 2d at 489.

In the ALJ's decision, the ALJ concludes that Plaintiff's obesity is medically determinable and a severe impairment. Such a judgment is expressly left up to the ALJ so long as it is supported by substantial evidence. SSR 02-1p, 2000 WL 628049 *4 (September 12, 2002) ("Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe."). While it is true that at the hearing Plaintiff alleged her high BMI "would warrant consideration of a Listing if the criteria of Listings 12.03 or 12.04 were not strictly met," this fleeting remark at the hearing

---

[3] 20 C.F.R. § 404 Subpart P Appendix 1 Section 12.04(A)(1)(d) (2009) notes "Psychomotor agitation or retardation." It should be noted that this use of the word retardation is different from Listing 12.05.

appears to be the only time the issue is specifically raised. Plaintiff does not point to a single medical source in the record or any testimony that links her obesity with her mental illness.

The most favorable evidence in this regard came at the hearing but it can hardly be said to be substantial evidence. Plaintiff testified to needing help with household chores because of her inability to concentrate. There was no suggestion that a reason she "just sits there and just stares at stuff" has any relation to her obesity. The testimony discusses mental illness but makes no reference to the connection of mental illness and obesity. The only evidence that even comes close is when asked by Plaintiff's counsel regarding how the thyroid affects her, Plaintiff says "[i]t affects my weight and somewhat - - I guess it's got something to do with my depression, some of it." (R. 49). Perhaps if there were other instances in the record where her weight and mental well being were discussed together, this statement would require further inquiry. But in the absence of such, the ALJ's decision in this regard is reasonable.

C. The ALJ's Hypothetical Questions to the VE Regarding Plaintiff's Mental Impairment Were Based on Substantial Evidence

Plaintiff argues that the ALJ's limitation to unskilled work is an illusory limitation because she would be limited to unskilled work if she had no mental impairment whatsoever given her unskilled work history. Plaintiff also asserts the limitation to limited public contact "is not much better." Plaintiff claims that the only mental residual functional capacity assessment, which was filled out by a non-examiner, contains three other moderate limitations in addition to limited public contact. Plaintiff raises the question as to why these were not included in the ALJ's hypothetical given the weight ascribed to these limitations. In large measure, Plaintiff misrepresents the ALJ's hypothetical.

The purpose of the VE's testimony is to assist in the last step of the disability evaluation, in which the ALJ considers a claimant's RFC assessment, age, education and work experience to

13

see if the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(5). Accordingly, the hypothetical question is limited to the RFC assessment and does not need to include evidence that the ALJ does not find credible. Eicheleberger v. Astrue, 2009 WL 262360 *9 (D. Md. 2009).

In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record. Chester v. Mathews, 403 F. Supp. 110 (D. Md. 1975). In addition, it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments. Stephens v. Secretary of Health, Education and Welfare, 603 F.2d 36 (8th Cir. 1979). The opinion of a vocational expert must be based on more than just the claimant's testimony – it should be based on the claimant's condition as gleaned from the entire record. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). When posing hypothetical questions, the ALJ "need only pose those that are based on substantial evidence and accurately reflect the plaintiff's limitations." France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000) (citations omitted). See also, McPherson v. Astrue, 605 F. Supp .2d 744, 761 (S.D.W.Va. 2009) ("It is not necessary that the hypothetical mention the underlying diagnoses[], what is important is that the VE is presented with an accurate picture of the plaintiff's limitations.") (citation omitted). "In the evaluation of disability on the basis of mental disorders, consideration must then be given to the degree of limitation such impairment may impose on the individual's daily activities, range of interests, ability to take care of personal needs, and ability to relate to others." SSR 83-17, 1983 WL 31246 *2 (1983).

In all, five hypotheticals were presented to the VE: three by the ALJ and two by Plaintiff's counsel. To facilitate the discussion, that portion of the hearing is provided below. Examination of the VE by the ALJ:

Q: You've already given her prior relevant work, and I'm going to ask you to consider a hypothetical individual who is about 46 years old. A lady with a high school education with the ability to read, write, and use numbers, in the context of the work history you've described. Able to lift and carry 10 to 20 pounds frequently. Stand and walk six, sit six. Ten to twenty in light of a large body mass index. I'm specifically taking that into consideration in finding light, not medium. No ladders or scaffolds, no dangerous heights, no moving machinery, no crouching. Able to understand, remember, and carry out simple instructions. Can adequately concentrate and persist at that level of complexity. Would there be jobs in significant numbers in the national or regional economy that such a hypothetical individual could perform on a sustained basis?

A: Yes, Your Honor. This hypothetical individual could perform the following light, unskilled jobs. This hypothetical individual would be able to work as an office helper, non-typing position in an office. Unskilled, SVP 2. There are about 300 of these office helper positions in the local region which would be defined as a 75-mile radius of Cambridge, Maryland. There are about 140,000 of these positions performed in the national economy. Also, this hypothetical individual can work as a cashier, unskilled, SVP 2. There are about 600 of these positions performed in the local region, and about 360,000 nationally.

Q: Okay, thank you. And that's - - again, that 600 local is local being 75-mile radius of Cambridge, Maryland?

A: Correct.

Q: Thank you. Now a second hypothetical with all those. And add limited contact with the general public. Would there be jobs?

A: The cashier position would be eliminated. The office helper position would have about a 20-percent reduction, meaning that about 80 percent of those positions are not - - the individual is not required - -

Q: Eight percent?

A: Eighty percent would remain, yes. Other positions that this hypothetical individual could perform that would not involve work with the general public would be sorter/inspector. Light, SVP 2. About 150 of these positions performed in the local region, and about 68,000 nationally.

Q: A sorter/inspector, sort of limit contact with coworkers?

A: It has lower than average amount of contact with coworkers.

Q: Now giving full credibility, Mr. Mealson, to everything. Nervousness, agitation, hallucination, feelings of anxiety at work, lack of well-being in public, inability to concentrate, need to medicate. Would there - - everything you've heard today and might've noticed in the record in the vocational aspect of this Claimant's file, a hypothetical individual asserting the same impairments and problems, would there be jobs in significant numbers? And if not, could you give - - could you address to simply why you feel such a person could not work?

A: Yes, Your Honor. This hypothetical individual based on the testimony would not be able to perform substantial gainful activity. The reasons that you cite with the problems with the depression, problem with the lack of concentration, being able to be reliable. But based on the totality of the testimony

15

> and taking as a cumulative effect, I believe there would not be an ability to perform substantial gainful activity.
> ALJ: Thank you, appreciate it. Any questions for the vocational expert, Mr. Mehring?
> ATTY: Just a couple, Your Honor, just to see if we can flesh it out a little more.
> Examination of Vocational Expert by Attorney:
> Q: Mr. Mealson, if we took it from [Exhibit] 11F with marked impairment as to social interaction and adaptation. So if we took Judge Powell's second hypothetical before the full credibility hypothetical, and added that there was a marked impairment as to social interaction and adaptation, would that individual be able to perform the work that you enumerated for her?
> A: That marked level means that the individual is really not able to deal with people at all. That's the way I read it. If a person - - the other limitations in hypothetical two, adding that marked level, I think that it would be fair to say that that person would not be able to perform substantial gainful activity.
> Q: Thank you. Two other questions, one coming out of the psychiatric review technique form at [Exhibit] 2F. And there we would have - - the functional limitations would be - - difficulty maintaining social function would be moderate. Difficulty maintaining concentration, persistence, and pace would be moderate. And there would be episodes of decompensation, each of extended period - - each of extended durations of one to two times per year, and one to two weeks per time. Each episode was an extended period of duration of one to two weeks. Would that individual be able to perform any work that was available to her in the national economy that you enumerated for Judge Powell?
> A: I think that after the second episode each year missing one to two weeks, they would be terminated. These are entry-level positions that do require the person to be there. So I think with the problems in concentration and moderate social functioning, once they miss that second period of work, they would be terminated.

(R. 55-56).

In an unpublished opinion, the Fourth Circuit has stated that while "the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record on the [Plaintiff's] impairments. There is no obligation, however, to transfer the findings on the PRTF [Psychiatric Review Technique Form] verbatim to the hypothetical questions." Yoho v. Commissioner, 1998 WL 911719, 168 F.3d 484 (Table)(4th Cir. 1998) (citing English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)).

The ALJ went through each of the following functional limitations listed in paragraph B in the decision. In each instance, the ALJ cited specifically to the record to support the decision she ultimately reached. For example, on the subject of "Activities of Daily Living," the ALJ explained why Plaintiff's assertions were rejected. The ALJ noted that Plaintiff "was termed 'helpless in shopping for her own needs' in July 2007, but in November 2007, [Plaintiff] was again found to be 'stable' by her current treatment providers at Choices Family Services (Exhibit 8F)." The ALJ also pointed to other places in the record where Plaintiff was found to be "stable."

Plaintiff is correct that the ALJ's hypotheticals do not specifically use the term "moderately." However, that is not to say that the VE was asked hypotheticals that are inconsistent with the ALJ's ultimate findings. In the decision, the ALJ states "[a]ble to understand, remember, and carry out simple instructions" as well as "[c]an adequately concentrate and persist at that level of complexity." The limitations as described denote someone with less than "marked limitations," or put another way, someone with moderate limitations.

While it may have been preferable for the ALJ to use the words "moderate limitations," this is not fatal. Further, Plaintiff's counsel did pose a hypothetical to the VE with the "moderate" language, she claims is so crucial. Though the VE's conclusions were different, the variance in the responses does not turn on this distinction. In viewing the VE's answer to Plaintiff's hypothetical, it was only after a second episode of decompensation, by which Plaintiff would presumably be absent for one to two weeks, that the VE concluded Plaintiff would be terminated. At most, as the ALJ notes in the decision, all that the record shows is that Plaintiff "has experienced one to two episodes of decompensation (Exhibit 2F)." But nowhere in the

record is there evidence that in fact two absences, for the alleged duration, occurred. A fact that Plaintiff does not respond to save for the question asked at the hearing. Plaintiff does nothing to demonstrate where in the record there is a basis provided for the hypothetical Plaintiff proposed. As such, the ALJ's hypothetical questions posed to the VE were reasonable.

D. Jones Was Not Deprived of a Full and Fair Hearing by the ALJ.

The ALJ has a duty to fully and fairly develop the record. See Cook v. Heckler, 783 F.2d 1168 (4th Cir. 1986). "Fair hearing is a term of art … [o]f course, the parties to a 'fair hearing,' as in the instant case, may not regard the proceeding as at all 'fair' in the ordinary sense of the word." Wojchowski v. Daines, 498 F.3d 99, 103 n.5 (2d Cir. 2007) (citation omitted). Because an administrative hearing is supposed to be "non-adversarial," the ALJ has a duty to develop a full and fair record. Walker v. Harris, 642 F.2d 712, 714 (Cir. 4th 1981) (discussing where courts have remanded cases for good cause where the ALJ fails "diligently to explore all relevant facts especially in cases of uneducated, pro se claimants and where the absence of counsel appears to prejudice a claimant.") (Citations omitted). But where a plaintiff complains that a hearing conducted by an ALJ was not full and fair "[t]he court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997) (citing Brown v. Shalala, 44 F.3d 931 (11th Cir. 1995)).

In the instant case, Plaintiff simply complains of how angry and rude the ALJ was to Plaintiff and Plaintiff's counsel. But absent evidence, or even an argument, that the ALJ's conduct caused some type of impropriety, there is nothing for the Court to do in a situation where there are not gaps in the record and any signs of anger, impatience, etc. are of no import. Henderson v. Federal Aviation Admin., 7 F.3d 875 (9th Cir. 1993) ("Henderson does not show

18

how these interchanges so severely interfered with the fairness of his hearing as to deprive him of due process.").

Plaintiff's implication seems to suggest that because she suffers from schizophrenia, the treatment she received by the ALJ denied her a full and fair hearing. In an unreported case, the Plaintiff argued that the "ALJ's 'rude and impatient' conduct toward Plaintiff during the hearing evidenced bias against Plaintiff, and that such bias denied Plaintiff a full and fair hearing because it made her too anxious to answer questions." Klinger v. Barnhart, 2003 WL 21654994 *2 (E.D.Pa. 2003). The court rejected Plaintiff's arguments on the grounds that Plaintiff was required to raise such complaints with the ALJ per the regulations. Id. Accordingly, failure to do so, when represented by counsel, operates as a waiver. Id. (Citation omitted). In essence, Plaintiff's argument on this ground should have been raised at the hearing.

## V. Conclusion

Based on the foregoing, the Court DENIES Plaintiff's Motion, and GRANTS Commissioner's Motion.

November 29, 2010 _____/s/_____
Charles B. Day
United States Magistrate Judge

CBD/sm